Estate of Alfred E. Beck, Deceased, Old Colony Trust Company and Sarah B. Beck, Executors, and Sarah B. Beck, Individually v. Commissioner.
Estate of Beck v. Commissioner
Docket No. 86574.
United States Tax Court
T.C. Memo 1962-112; 1962 Tax Ct. Memo LEXIS 196; 21 T.C.M. (CCH) 607; T.C.M. (RIA) 62112; May 11, 1962
*196 Basis of land referred to herein as Lot A and basis of land and buildings referred to herein as Lot B determined for purpose of computation of gain on sale. John C. Reardon, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in income tax of petitioners for the taxable year 1956 in the amount of $5,166.86. The issues before us raise the question of the basis, for the purpose of computation of gain on sale of land referred to herein as Lot A, and land and buildings referred to herein as Lot B. Findings of Fact Some of the facts are stipulated and are incorporated herein by reference. The petitioners are husband and wife with residence at 21 Ridge Road, Lawrence, Massachusetts. Petitioners' 1956 income tax return was filed with the district director of internal revenue for the district of Massachusetts. On September 17, 1956, the petitioners sold approximately six acres of land and the buildings thereon at Osgood Street and Great Pond Road, North Andover, Massachusetts, to Arthur B. Colgate for $40,000. On March 14, 1894, Frank M. *197 Greenwood (the father of petitioner Sarah B. Beck) purchased two pieces of real property in North Andover, Massachusetts, for a total purchase price of $2,500. One piece of property, hereinafter called "Lot A," consisted of land located on the north side of Osgood Street. The other piece of property, hereinafter described as Lot B, consisted of land and buildings thereon located on the south side of Osgood Street. In the taxable year 1914, Frank M. Greenwood conveyed Lot A, which consisted of approximately one and one-half acres of land, to decedent, Alfred E. Beck, for $200. Said Lot A constituted part of the property which was sold to Arthur B. Colgate on September 17, 1956. Sarah never held title to Lot A. In 1925, Frank M. Greenwood sold approximately 6,500 square feet of Lot B, abutting 116 feet along the shores of Lake Cochickewick, to the Lawrence Ice Company for $500. The balance of Lot B and the buildings thereon were conveyed by Frank M. Greenwood to petitioner, Sarah B. Beck, in 1930 as a gift. Said balance of Lot B given to Sarah in 1930, together with Lot A, constitute the entire property which the petitioners sold to Arthur B. Colgate for $40,000 on September 17, 1956. Alfred *198 never held title to Lot B. The March 1, 1913, values of the items listed below and comprising part of Lot B given to Sarah in 1930 are as follows: Main dwelling, $7,956; barn, $1,700; two-family duplex, $2,700; and land not under water (6.31 acres), $2,524. The total March 1, 1913, value of said items was $14,880. The garage which was on said property in 1913 no longer existed at the time of sale (1956) and there is no evidence of any expenditure for replacement There is no evidence of the March 1, 1913, value of land under water on Lot B. There is no evidence of any land or improvements thereon given to Sarah and comprising Lot B except those to which reference is made above. Respondent, in his statutory notice, determined that the fair market value as of March 1, 1913, of the land and buildings in question was $10,000. Petitioners, in their 1956 income tax return, claimed $39,698.39 as the cost or other basis of the land and buildings in question. Opinion With respect to Lot A, respondent admits that no allowance of basis was made in the statutory notice. He further admits that the cost to Alfred was $200, and agrees that basis be increased accordingly. The record *199 supports this view. Petitioners do not concede that this view is correct, but offer no foundation in fact or law for the allowance of any additional basis for Lot A. We accordingly hold that the basis for Lot A is $200. Since petitioners filed a joint return, no allocation of selling price between Lots A and B is necessary. As to Lot B, both parties agree that, in determining basis, the only question requiring determination is the fair market value, as of March 1, 1913, of the land and buildings on Lot B sold in 1956. The burden of proof of error rests with petitioners. We have set forth in our findings, by items and amounts, our ultimate conclusions as to fair market value as of March 1, 1913, of the land and buildings in question, the total being $14,880, and there is no occasion to repeat our findings here. Our findings as to March 1, 1913, values are based substantially on the testimony of the witness Whipple. The record fully supports his qualification as a valuation expert in the instant case and we were favorably impressed with him and his testimony. We need not go into details as to his valuation techniques. His opinions were largely based on a backcasting approach *200 beginning with his knowledge and observations in 1959, and relating them back to 1913. No other or better approach was produced by respondent. We agree with Whipple's opinions (other than with respect to the land under water, discussed infra). We do not mean to imply that under the circumstances his results were or could possibly be made correct to the penny, but we are satisfied that his conclusions were substantially correct, and should be adopted in toto (with the exceptions noted infra) in the absence of any effective challenge to their correctness. We therefore hold that petitioners have sustained their burden of proof to the extent of our affirmative findings of fair market value of $14,880 as of March 1, 1913. As to the other expert witness, we have given no weight to his testimony for reasons developed on cross-examination. There is no acceptable evidence of the March 1, 1913, value of that part of Lot B under water. The evidence with respect thereto was stricken because it related to capitalization of compensation for personal services and not to valuation of the land. As stated in our findings, the garage which was on the property in 1913 was no longer in existence *201 in 1956 and there is no evidence of any expenditure for replacement. Decision will be entered under Rule 50.